# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MISSOURI
# EASTERN DIVISION

| | |
|---|---|
| NICOLE SMITH, ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> PLANNED PARENTHOOD OF THE ) <br> ST. LOUIS REGION, et al., ) <br> ) <br> Defendants. ) | No. 4:03-CV-1727 CAS |

## **MEMORANDUM AND ORDER**

This matter is before the Court on remaining defendant Planned Parenthood of the St. Louis Region's Motion to Dismiss Counts I, II and III for Failure to Follow Order of Court. Plaintiff opposes the motion. For the following reasons, defendant's motion will be granted, and Counts I, II and III of plaintiff's amended complaint will be dismissed without prejudice for failure to file the health care affidavit required by Revised Statutes of Missouri § 538.225.1 (2000).[1]

**Background**.

This action was originally filed in this Court in October 2001, captioned <u>Smith v. Planned Parenthood of the St. Louis Region, et al.</u>, Case No. 4:01-CV-1574 CAS. On motion of the plaintiff, the case was voluntarily dismissed without prejudice on November 26, 2002. Plaintiff refiled the action one year later on November 26, 2003. The Complaint alleged that plaintiff Smith went to Planned Parenthood of St. Louis in October 1999 for counseling concerning her pregnancy, and despite her ambivalence a physician placed laminaria inside plaintiff's cervix in order to cause dilation

---

[1]All further statutory references are to the Revised Statutes of Missouri 2000, unless otherwise noted.

so that an abortion could be performed the next day.² Later the same day, plaintiff decided she did not wish to continue the procedure and had the laminaria removed at a hospital after defendant refused to do so. Plaintiff alleged she developed a high fever as a result of infection from insertion of the laminaria, and a sonogram on October 5, 1999, revealed that her unborn child had died in utero. Plaintiff underwent a hysterectomy and uterine curettage evacuation on October 8, 1999. Plaintiff asserts claims for medical malpractice, fraud and deceptive trade practices and wrongful death under Missouri law, based on diversity of citizenship.

On March 1, 2004, plaintiff moved for additional time to file the affidavit required by Section 538.225. On March 24, 2004, the Court denied without prejudice plaintiff's motion for additional time to file the affidavit because (1) the motion was not signed by counsel, and (2) the motion did not comply with Local Rule 4.01(A) as it was not accompanied by a memorandum in support with citation to supporting authority, and did not even contain a citation to the statute which requires the health care affidavit. See Mem. and Order of Mar. 24, 2004, at 8-9 [Doc. 10]. Plaintiff did not renew her motion for additional time to file the required affidavit.

In May 2004, plaintiff filed a motion for leave to file an amended complaint, which inter alia added new counts.³ Because no responsive pleading had been filed, plaintiff did not need leave of Court to amend her complaint. See Rule 15(a), Fed. R. Civ. P. As a housekeeping matter, the Court granted plaintiff leave to file the amended complaint. The Amended Complaint reiterates plaintiff's

---

²Laminaria is a "[s]terile rod made of kelp (genus *Laminaria*) which is hydrophilic, and, when placed in the cervical canal, absorbs moisture, swells, and gradually dilates the cervix." Stedman's Medical Dictionary 964 (27th ed. 2000).

³The Amended Complaint also added another plaintiff, Tiffany McMorris, whose claims were severed by the Court in the Memorandum and Order dated November 23, 2004.

state law claims for medical malpractice (Count I), fraud and deceptive trade practices (Count II), and wrongful death (Count III), and adds claims for civil rights violations under 42 U.S.C. §§ 1981 and 1985 (Counts IV and V).

By order dated November 23, 2004, the Court denied without prejudice defendant's motion to dismiss the case for failure to file the affidavit required by § 538.225 and ordered plaintiff to file such an affidavit no later than January 7, 2005. The Court stated that if plaintiff failed to comply with the order, the Court would entertain a renewed motion to dismiss. On January 7, 2005, plaintiff filed a document signed by plaintiff's counsel Jason Craddock entitled "Affidavit Pursuant to Missouri Revised Statutes §538.225," based on the opinions of David C. Reardon, Ph.D. Defendant moves to dismiss Counts I, II and III of the Complaint for failure to comply with the requirements of the health care affidavit statute.

**Discussion**.

Defendant asserts that plaintiff's affidavit fails to comply with the requirements of § 538.225 because Reardon is not a legally qualified health care provider within the meaning of the statute. Defendant asserts that the statutory requirement of a health care provider's affidavit applies to Counts I, II and III of plaintiff's Amended Complaint, which assert claims for medical malpractice, fraud and wrongful death.

Plaintiff responds that although Reardon is not a physician, Missouri courts have allowed non-physicians to validate claims sounding in medical malpractice when unusual circumstances exist which qualify the non-physician to give such an opinion. Plaintiff asserts that Reardon is "uniquely qualified to provide expert validation and testimony on the issue of the screening for risk factors associated with abortion" and that "[t]he failure to screen for risk factors is the gravamen of Plaintiff's

3

Complaint with respect to medical malpractice." Pl.'s Response at 2. Plaintiff also asserts that her malpractice claim alleges a lack of informed consent, and Reardon's research is "concentrated largely in the arena of what constitutes proper informed consent in the abortion context." Id. at 3.

Plaintiff also contends that even if her medical malpractice claim in Count I is dismissed for failure to comply with the health care affidavit statute, her fraud and wrongful death claims in Counts II and III should not be dismissed, as the health care affidavit requirement does not apply to these claims.

### 1. Legally Qualified Health Care Provider.

The Missouri health care affidavit statute provides in pertinent part:

> In any action against a health care provider for damages for personal injury or death on account of the rendering of or failure to render health care services, the plaintiff or his attorney shall file an affidavit with the court stating that he has obtained the written opinion of a <u>legally qualified health care provider</u> which states that the defendant health care provider failed to use such care as a reasonable prudent and careful health care provider would have under similar circumstances and that such failure to use such reasonable care directly caused or directly contributed to cause the damages claimed in the petition.

§ 538.225.1 (emphasis added).

Chapter 538 of the Missouri Revised Statutes defines a "health care provider" as:

> any physician, hospital, health maintenance organization, ambulatory surgical center, long-term care facility, dentist, registered or licensed practice nurse, optometrist, pediatrist, pharmacist, chiropractor, professional physical therapist, psychologist, physician-in-training, and any other person or entity <u>that provides health care services under the authority of a license or certificate</u>[.]

§ 538.205(4) (emphasis added).

As a threshold matter, the Court finds that plaintiff's attorney did not file an affidavit as required by the statute. The document is entitled "Affidavit," and is affixed with the electronic

4

representation of plaintiff's counsel.[4] There is no indication, however, that plaintiff's counsel signed the affidavit in the presence of a notary public or otherwise swore to its contents under oath. An affidavit is "[a] voluntary declaration of facts written down and sworn to by the declarant before an officer authorized to administer oaths." Black's Law Dictionary 58 (7th ed. 1999). "There is, of course, no affidavit unless there was an actual swearing to the facts which it purported to affirm under oath." Sears, Roebuck and Co. v. Hupert, 352 S.W.2d 382, 385 (Mo. Ct. App. 1961). Here, there is no valid affidavit as there is no proof the "affidavit" was sworn to before an officer authorized to administer oaths. This alone constitutes a failure to comply with the health care affidavit statute.

Turning to the merits of defendant's motion to dismiss, the plaintiff's proposed expert in this case, David C. Reardon, Ph.D., is described by plaintiff as having been "actively engaged in the study of women's decision making processes regarding abortion and their psychological and physical reactions to abortion since 1982." Plaintiff asserts that Reardon has studied relevant published literature, collected testimonies from women, conducted original quantitative research on the emotional and physical complications of abortion, and has published his findings in a number of books and peer-reviewed journals of medicine or psychology. Plaintiff also states that Reardon is the Director of the Elliot Institute in Springfield, Illinois, but does not provide any information with respect to his educational qualifications or state what the Elliot Institute is. The article authored by Reardon and attached to the Craddock "affidavit" as an exhibit states that Reardon is a "biomedical ethicist."

---

[4]See Administrative Procedures for Case Management/Electronic Filing in the United States District Court for the Eastern District of Missouri (revised 4/12/2004), § II.G.

The Court concludes, based on the foregoing, that plaintiff has failed to submit the affidavit of a "legally qualified health care provider" as required by § 538.225.1. There is no proof that Reardon is a person who provides health care services under the authority of a license or certificate, as required by § 538.205(4). Thus, Reardon is not qualified to submit an affidavit in support of plaintiff's claims. Plaintiff's assertion that Reardon's field of expertise qualifies him to offer an opinion as to the care a reasonably prudent and careful health care provider would have used under similar circumstances is without merit in light of § 538.225.1's requirement that the opinion be from a licensed health care provider as defined by § 538.205(4).

Moreover, even if Reardon were a licensed health care provider, plaintiff has failed to establish that he is qualified to offer an opinion as to the standard of care applicable in this case, i.e., what a reasonable and prudent physician or abortion provider would have done under the same or similar circumstances, where plaintiff claims that defendant failed to disclose to her the physical and emotional risk factors of abortion. See Pl.'s Response at 2. Reardon is not alleged to be a physician, an abortion provider, or a health care provider of any sort. Reardon's opinion and expertise is described as concerning "women's decision making processes regarding abortion and their psychological and physical reactions to abortion since 1982." While topically related to the subject matter of plaintiff's case, this area of study does not legally qualify Reardon to render standard of care opinions in this case. See, e.g., Boyce v. United States, 942 F. Supp. 1220, 1225 (E.D. Mo. 1996) (in a medical malpractice case, "it is usually necessary to prove by expert testimony from members of that profession that the skill or technique used did not conform to the standards of that profession") (quoting Steele v. Woods, 327 S.W.2d 187, 199 (Mo. 1959)); Wuerz v. Huffaker, 42 S.W.3d 652, 658 (Mo. Ct. App. 2001) (a lack of informed consent claim required expert testimony

as to the risks a reasonable medical practitioner would disclose under the same or similar circumstances).

As a result, Count I of plaintiff's Amended Complaint, which asserts a claim for medical malpractice, must be dismissed without prejudice for failure to file the health care affidavit. See § 538.225.5 ("If the plaintiff or his attorney fails to file such affidavit the court may, upon motion of any party, dismiss the action against such moving party without prejudice.")

**2. Claims Subject to Health Care Affidavit Requirement**.

The Court must now determine whether plaintiff's fraud and wrongful death claims should be dismissed as well for failure to file the health care affidavit. Defendant asserts that both the fraud and wrongful death claims are based on plaintiff's allegations that defendant failed to disclose to her the physical and emotional risk factors of abortion. Defendant asserts that plaintiff's "true claims" relate to the provision of health care services, and therefore the health care affidavit statute applies to both.

Plaintiff responds that in Count II she asserts that defendant engaged in fraud and deceptive trade practices, and thereby induced her into undergoing an abortion, something she would not have done had she not been defrauded, and as a result her unborn child died, which is the basis for the wrongful death claim in Count III. Plaintiff states that she does not allege that negligent health care caused the death of the child, but rather that defendant's fraudulent inducement led to her damage and the child's death. Plaintiff also quotes the Missouri fraud statute, Mo. Rev. Stat. § 407.020.1.

Under Missouri law, the elements of a plaintiff's cause of action do not determine conclusively whether the statutory affidavit is required. St. John's Reg'l Health Ctr., Inc. v. Windler, 847 S.W.2d 168, 171 (Mo. Ct. App. 1993). If the relationship of the parties is that of health care provider and

7

recipient, and if the "true claim" relates only to the provision of health care services, the plaintiff must obtain the health care affidavit. Id. (plaintiff asserting a false imprisonment claim based upon involuntary confinement in psychiatric unit was required to provide health care affidavit, because the basis for the alleged false imprisonment was the incorrect medical determination that she needed to be confined); see also Vitale v. Sandow, 912 S.W.2d 121 (Mo. Ct. App. 1995) (affidavit was required for libel claims against physicians who informed insurer and employer that plaintiff's physical symptoms were due to malingering, as the central issue at trial would be whether plaintiff was malingering, regardless of how the claims were characterized, and thus the "true claim" was whether the doctors' diagnoses were correct); Jacobs v. Wolff, 829 S.W.2d 470 (Mo. Ct. App. 1992) (plaintiff's tort claims against nurse and medical director of cardiac rehabilitation program arose out of their alleged wrongful acts as health care providers and therefore required affidavit).

The Missouri legislature intended that the term "personal injuries" as used in Chapter 538 of the Missouri Revised Statutes be interpreted broadly, and to include all actions for injuries to the person, whether to the person's rights or to the person's body. St. John's Reg'l Health Ctr., 847 S.W.2d at 172. The Missouri Supreme Court has held that the health care affidavit statute also applies to products liability actions, as evidenced by the legislature's use of the words "any action" in the statute. Budding v. SSM Healthcare Sys., 19 S.W.3d 678, 680 (Mo. 2000) (en banc).

In this case, plaintiff's fraud and deceptive trade practices claims in Count II are based on the contention that defendant failed to disclose to plaintiff the physical and emotional risks of abortion and the particular procedure performed upon her. This claim incorporates the allegations of Count I, the medical malpractice claim. Count II is based on the parties' relationship of health care provider and recipient and relates to the provision of health care services, as the "true claim" is that defendant

8

did not disclose information to plaintiff about the physical and emotional risks of abortion prior to inducing an abortion by placing laminaria in her body. The health care affidavit statute therefore applies to Count II, and this count must be dismissed without prejudice for failure to provide the affidavit of a legally qualified health care provider as required by Section 538.225.1.

Plaintiff's wrongful death claim in Count III incorporates the prior paragraphs of the complaint and asserts that "as a result of" defendant's failure to "inform Plaintiff of physical and emotional risks associated with abortion and the particular procedure performed upon Plaintiff," . . . and defendant's "refusal to remove the laminaria from Plaintiff's body in response to her request, Plaintiff suffered the loss of her child by death." Amended Complaint, ¶ 49. Count III is also based on the parties' relationship of health care provider and recipient; the "true claim" is the failure to disclose information to plaintiff about the physical and emotional risks of abortion, and the failure to remove the abortion-inducing laminaria. As a result, the health care affidavit statute also applies to Count III, which must be dismissed without prejudice for failure to provide the affidavit of a legally qualified health care provider as required by Section 538.225.1.

**Conclusion**.

For the foregoing reasons, the Court concludes that defendant's motion to dismiss should be granted. Plaintiff's claims in Counts I, II and III of the amended complaint should be dismissed without prejudice pursuant to Section 538.225.5, Mo. Rev. Stat., because plaintiff has failed to file the affidavit of a legally qualified health care provider, which is required with respect to these claims.

Accordingly,

**IT IS HEREBY ORDERED** that defendant's Motion to Dismiss Counts I, II and III for Failure to Follow Order of Court is **GRANTED**. [Doc. 35]

9

An appropriate order of partial dismissal will accompany this memorandum and order.

                                                */s/ Charles A. Shaw*
                                                **CHARLES A. SHAW**
                                                **UNITED STATES DISTRICT JUDGE**

Dated this  31st  day of May, 2005.